UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| Marquis Yachts, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>VanDutch Marine, Ltd., a foreign corporation,<br><br>      Defendant. | Court File No. _____<br><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Marquis Yachts, LLC ("Marquis"), as and for its Complaint against Defendant VanDutch Marine, Ltd. ("VanDutch") states and alleges as follows:

### THE PARTIES

1. Marquis is a limited liability company organized under the laws of Minnesota with its principal place of business in Pulaski, Wisconsin. Marquis is one of the world's premier manufacturers of luxury yachts.

2. Marquis is a citizen of each state in which its members reside. Marquis is owned by J&D Acquisitions, LLC, a limited liability company which is organized under the laws of Minnesota that has its principal place of business in Hopkins, Minnesota. J&D Acquisitions, LLC is owned equally by ILJ Enterprises, LLC on the one hand, and the John Paul DeJoria Family Trust, Alexis J. DeJoria, Michaeline J. DeJoria, and the John Anthony DeJoria Trust on the other. In turn, ILJ Enterprises, LLC is a limited liability company organized under the laws of Minnesota that has its principal place of

business in Hopkins, Minnesota. Its owners are WGD, Inc., a Minnesota corporation; MI-JT, LLC, a limited liability company organized under the laws of Minnesota; Marshall Financial Group, Inc. a Nevada corporation; C.H. Robinson Company, Inc., a Delaware corporation; Okabena International Equity Fund, LLC, a limited liability company organized under the laws of Delaware; and Cumming Investment Company, LLC, a limited liability company organized under the laws of Wyoming. The trustees of the Jon Paul DeJoria Family Trust are citizens and residents of Texas and the trusts have their offices in Texas. Alexis J and Michaeline J. DeJoria are also citizens and residents of Texas.

3. None of the Plaintiffs or their members are citizens or residents of the United Kingdom or the Netherlands

4. Upon information and belief, Defendant VanDutch is a corporation organized and doing business under the laws of the Netherlands, with its principal headquarters located at 2nd Floor, The Burgh House, Market Road, Wickford, Essex, United Kingdom. Its principal business is the design, manufacture and sale of its VanDutch brand of yachts.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to the claims occurred, and a substantial part of the property that is the subject of this action is situated, in this District.

2

# FACTS

## A. The Contract and the Representations

7. In November 2013, the parties entered into a contract entitled "Purchase Agreement for Construction of 120 VanDutch yachts" ("the Contract"), a copy of which is attached hereto and incorporated herein as Exhibit A. The Contract was signed on November 18, 2013, with an "Effective Date" of November 19, 2013. The Contract is governed by the laws of Wisconsin (¶ 10).

8. On October 22, 2013, Marquis' then-President and CEO, Robert Van Grunsven, and George Jousma, President and an owner of YachtBlue, LLC, Marquis' dealer in Fort Lauderdale, Florida, met with two VanDutch representatives, Anko Mast and Chris Holtzheuser. Mr. Mast was the President and CEO of VanDutch North America, LLC, a wholly owned American subsidiary of VanDutch that was also located in Fort Lauderdale. At that meeting, the VanDutch representatives stated that VanDutch wanted to shift its North American production from S2, Ltd. (the manufacturer of Tiara Yachts, located in Holland, Michigan) to Marquis. The VanDutch representatives stated that the reason was related to quality, i.e., that they believed that, based on the quality of Marquis Yachts, that Marquis would be a better manufacturer of VanDutch Yachts than the results they had experienced with S2, Ltd.

9. The VanDutch representatives stated that the molds and equipment for the manufacturer of VanDutch Yachts could be delivered from Michigan to Marquis' facilities in Pulaski in mid-to-late December. They stated that the molds and equipment would be ready to be put into production on January 2, 2014. They also stated that they

3

expected annual production of the five models of VanDutch yachts, ranging in size from 30-70 feet, would be a total of a minimum of 60 yachts and a maximum of 108 yachts during calendar year 2014.

10. The Fort Lauderdale International Boat Show, which is regarded as the second most important North American boat show each year, was held from October 31 through November 4, 2013. Marquis displayed some of its models, along with its other brand, Carver Yachts. VanDutch, through its North American subsidiary, also displayed its yachts.

11. The same participants in the October 22 meeting also met during the Fort Lauderdale show. In those meetings, Mr. Mast reiterated the representations he made at the October 22 meeting, and at the conclusion of those discussions, the parties agreed to prepare a contract and enter into a relationship. In doing so, Marquis reasonably relied on the representations made by VanDutch's representatives.

12. On October 11, 2013, Mr. Mast asked Mr. Van Grunsven that Marquis prepare a preliminary production time schedule for all of the VanDutch yachts on the basis that the tooling and molds would be received by Marquis by the end of November (and the 70-foot model by mid-January). Marquis prepared a schedule dated November 12, 2013, and submitted it to VanDutch. It called for the production of a total of 117 VanDutch yachts during 2014. VanDutch accepted that schedule.

13. Under the Contract, Marquis agreed to manufacture 120 VanDutch yachts from the inception of the Contract through December 30, 2014. The 120 yachts consisted of all five models.

4

14. In order to timely perform its obligations under the Contract, Marquis had to expand its workforce and dedicate a portion of its manufacturing facilities exclusively to the manufacture of the VanDutch yachts. While doing so, it awaited delivery of the promised molds, tooling, plans and specifications.

15. The necessary tooling and molds were delivered late and on a haphazard, piecemeal basis. When the equipment variously arrived at Marquis' factory in Pulaski, Marquis' personnel inspected the equipment and found the components largely unusable without substantial refurbishing and rehabilitation. Marquis personnel immediately informed VanDutch's named representative under the Contract, Trevor Fenlon, of the condition of the equipment and its inability to be placed in immediate service. Mr. Fenlon, who was regularly present in the Marquis plant, authorized Marquis to perform whatever work was necessary in order to render the molds and tooling usable for the purpose of manufacturing VanDutch yachts.

16. Based upon that direction, Marquis incurred substantial unanticipated engineering and pre-manufacturing costs that far exceeded that which should have been incurred had the VanDutch equipment been usable as originally represented. This resulted in delays in the production schedule set forth under the Contract.

17. Based on the original production volume and schedule, Marquis forecasted the need to hire an additional 121 employees as work under the Contract progressed. Marquis began hiring the additional personnel in early 2014. In addition, Marquis had to make capital improvements to its factory in order to handle the anticipated production.

5

Marquis used borrowed money to fund a portion of the necessary expenses under the Contract.

18.     Unbeknownst to Marquis and contrary to the representations that were made by VanDutch's representatives before the Contract was signed, VanDutch had disputes with S2, Ltd. related to their contract. As a result of those disputes, S2, Ltd. claimed additional compensation from VanDutch, and refused to release the molds, tooling, other equipment, raw materials, and work-in-process to VanDutch so that they could be delivered to Marquis. Marquis did not learn of these facts until well into 2014.

19.     Because the production was set back, on February 3, 2014 VanDutch reduced the production volume for 2014 by 38 yachts, down to 82 yachts. Thereafter, the production volume was reduced to 48 yachts on June 23, 2014, and fluctuated down to 36 yachts by December 1, 2014. Then, as of early 2015, actual production bottomed out at a total of 17 yachts.

20.     Production was also adversely affected by VanDutch's failure to make the periodic "down payments on invoices" that were required under the Contract (paragraph 3 and Addendum E). VanDutch's failure and refusal to pay amounts required under the Contract worsened over time to the point that its United States subsidiary (located in Florida) was sold to a third-party who ultimately paid for the greatly reduced number of yachts that were finally produced.

21.     VanDutch's failure to provide usable plans, specifications, tooling, and molds; its acts and omissions that caused the number of yachts to be manufactured under the Contract to be dramatically reduced; and its nonpayment of sums due and owing

under the Contract, all caused substantial expense, losses, and damage to Marquis for which VanDutch is liable.

22. Marquis took reasonable steps to mitigate its damages as the need to do so arose, including laying off workers and reducing the purchase of raw materials.

## CLAIMS FOR RELIEF

### First Cause of Action-Breach of Contract

23. Plaintiff Marquis realleges and incorporated by reference paragraphs 1 through 22 above as if fully set forth herein.

24. The Contract is a binding agreement between Marquis and VanDutch.

25. VanDutch's acts and omissions in connection with the performance of the Contract, as detailed above, constituted material breaches thereof for which VanDutch is liable to Marquis.

26. Marquis is entitled to recover from VanDutch all damages that have been directly and proximately caused by the aforesaid breaches of the Contract, measured in the millions of dollars, including all direct, consequential and incidental damages allowed by law.

### Second Cause of Action-Breach of the Implied Covenant of Good Faith and Fair Dealing

27. Plaintiff Marquis realleges and incorporated by reference paragraphs 1 through 26 above as if fully set forth herein.

28. Under Wisconsin law, VanDutch had an implied duty of good faith and fair dealing with respect to the performance of its Contract with Marquis.

7

29. The numerous respects as alleged above, VanDutch breached that duty.

30. As a direct and proximate result of VanDutch's breach of its duty, Marquis has been damaged as previously alleged and is accordingly entitled to recover such damages from VanDutch.

### Third Cause of Action – Unjust Enrichment (In the Alternative)

31. Plaintiff Marquis realleges and incorporated by reference paragraphs 1 through 30 above as if fully set forth herein.

32. Marquis alleges this claim in the alternative, should the Contract be deemed not to address the substance of this claim.

33. Defendant VanDutch has been unjustly enriched by Marquis' refurbishing, renovating, and reworking the molds, tooling, and other equipment necessary to manufacture VanDutch yachts.

34. Defendant VanDutch's enrichment has been at Marquis' expense thus far, because VanDutch has not paid for the full and actual value of the improvements to those assets despite the authorization and commitment it made to do so.

35. Given Defendant VanDutch's conduct in the events that have occurred from late 2013 to the present, the circumstances are such that in equity and good conscience, Defendant VanDutch should be required to pay an additional amount of nearly two million dollars to Marquis, in light of the benefits Marquis has conferred on those assets.

## Fourth Cause of Action-Fraud in the Inducement (In the Alternative)

36. Plaintiff Marquis realleges and incorporated by reference paragraphs 1 through 35 above as if fully set forth herein.

37. Marquis alleges this claim in the alternative to the previous contract claims.

38. Defendant VanDutch knowingly and intentionally, or negligently, represented to Marquis that there was a demand for and a definite need to manufacture 120 VanDutch yachts from late 2013 through the end of 2014.

39. Defendant VanDutch knowingly and intentionally, or negligently, misrepresented to Marquis that the plans, specifications, tooling, and molds required to manufacture 120 VanDutch yachts, ranging in length from 30 feet to 70, were in good working condition and able to be used immediately in order to produce 120 VanDutch yachts during the referenced Contract time period.

40. Defendant VanDutch knowingly and intentionally, or negligently, misrepresented to Marquis that it was financially strong and therefore capable of making timely down payments upon the initiation of construction of each of the 120 VanDutch yachts it needed.

41. Defendant VanDutch knowingly and intentionally, or negligently, misrepresented the reasons that it desired to move its North American production from S2, Ltd. to Marquis.

42. Marquis reasonably relied upon VanDutch's misrepresentations in entering into the Contract. VanDutch intended and expected that Marquis would so rely.

9

43. Defendant VanDutch's fraudulent misrepresentations caused Marquis to enter into the Contract.

44. Defendant VanDutch's fraudulent misrepresentations directly caused Marquis to suffer millions of dollars in damages, which VanDutch promised to pay but has not paid.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Marquis Yachts, LLC prays judgment against Defendant VanDutch Marine, Ltd., as follows:

(a) For a substantial compensatory damages including all direct, incidental and consequential damages caused by VanDutch's multiple breaches of contract;

(b) In the alternative, for substantial damages to the extent of VanDutch's unjust enrichment at Marquis' expense;

(c) In the alternative, Marquis Yachts, LLC prays judgment for similar relief for all such damages caused by Marquis having been induced to enter into the Contract by VanDutch Marine, Ltd.'s fraudulent misrepresentations; and

(d) For such other and further relief as the Court determines is just, proper and equitable.

Dated: April 22, 2015  **MASLON LLP**

By: /s/ Geoffrey P. Jarpe
GEOFFREY P. JARPE (WI #1018994)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-4140
Telephone:  (612) 672-8200
Email:  geoffrey.jarpe@maslon.com

**ATTORNEYS FOR PLAINTIFF**

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all claims so triable.

_____
Geoffrey P. Jarpe

4833-8922-9347, v. 1